**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEVON FRYE,** | : | **CIVIL NO. 1:16-CV-780** |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| **v.** | : | **(Magistrate Judge Carlson)** |
| **SGT.  NATHANIEL WILT, et. al.,** | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Devon Frye, the plaintiff, is a homosexual inmate in the custody of the Pennsylvania Department of Corrections, currently incarcerated at the State Correctional Institution in Rockview, Pennsylvania.  In 2014, Frye was assaulted and raped by his cellmate, an inmate who was incarcerated for a rape conviction. In this action, Frye has sued a number of SCI-Rockview employees, alleging constitutional violations and a state-law tort stemming from his assaults. Specifically, Frye alleges that he was incarcerated under conditions which posed a substantial risk of serious harm and that prison officials were deliberately indifferent to his safety needs as a member of a vulnerable population in a historically violent prison.

Now pending before this Court is a partial motion to dismiss filed by the defendants.    (Doc. 7.)    The motion has been fully briefed and is ripe for disposition.  The plaintiff has conceded that he does not have viable a Fourteenth Amendment claim.  The plaintiff has also conceded that his Reckless Disregard of Safety tort claim would not survive a motion to dismiss.  As such, these claims should be dismissed.  The remainder of this Report and Recommendation will focus solely on the Eighth Amendment claim with respect to defendants Unit Manager Pasquale and Superintendent Steven Glunt.  For the reasons that follow, it is recommended that the defendants' motion to dismiss the Eighth Amendment failure to protect claim be denied at this time.

## II.    __BACKGROUND__[1]

On or about July 16, 2014, Brian White, an inmate at SCI-Rockview requested to be placed in a cell with the plaintiff, Devon Frye.  It is SCI-Rockview policy that all cellmate requests must be approved by the Unit Manager.  White's initial request to be placed in a cell with Frye was denied by Unit Manager Pasquale.   However, Frye alleges that White was undeterred by this initial denial

---

[1] The background to this report is taken chiefly from the plaintiff's complaint, and the factual allegations set forth in the complaint are accepted as true for purposes of this report and recommendation. *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  (Doc. 1.)

of his cell request, and he renewed his request which was then ultimately granted by Sergeant Nathaniel Wilt.[2]

Frye alleges that White is known to be a physically aggressive prisoner who is incarcerated at SCI-Rockview on a rape conviction.  White has a history of assaultive conduct within the prison, and had previously been disciplined as a result.  Frye further alleges that the "defendants knew that White was a sexual predator and extremely violent prisoner . . ." (Compl. 5.)  Frye was unaware that White had submitted a second request to cell with him until he was transferred into White's cell on July 18, 2014.  Soon thereafter, Frye asked Sergeant Wilt to remove him from White's cell.  At this point, Frye was informed that he could not be moved from White's cell for 90 days, in accordance with prison policy.

The day after Frye was transferred into White's cell, White asked Frye to engage in a sexual relationship with him.  Frye avers that he is openly gay and has a feminine appearance. Frye declined White's advances and informed his new cellmate that he did not want to be involved in a sexual relationship with him. White became extremely angry and grabbed Frye, preventing him from leaving the cell.  Frye reported this incident to Sergeant Wilt and indicated to him that he was fearful that he was in physical danger.  Frye alleges that all defendants were made

---

[2] At this point in discovery, it is unclear whether Unit Manager Pasquale approved the second cellmate request. (Compl. 3.)

aware of this incident.   Frye requested to be removed from White's cell immediately, but was once again denied.   Frye was not afforded any additional protection by any of the defendants.

In the middle of the night on July 23, 2014, White "smacked plaintiff in the face several times, started to choke him and covered his mouth to prevent him from screaming . . ." (Compl. 4.)   White proceeded to repeatedly punch Frye in the face. Finally, White threw Frye faced down on the bed, pulled down Frye's clothing, and raped him.   Frye alleges that during the incident he was yelling and screaming for officers to come to his aid, but did not receive help for at least one hour.

On April 24, 2015, White pleaded guilty to raping Frye and was sentenced to four to eight years in prison.

On the basis of the foregoing allegations, Frye claims that the policies and procedures in place at SCI-Rockview violate his Eighth Amendment right to be free from cruel and unusual punishment, and constitute deliberate indifference to a serious risk of harm.   Specifically, Frye cites to the disregard of his complaints of sexual harassment, an alleged requirement that inmates cannot be transferred to a different cell for 90 days even after making credible reports of assault and imminent danger, and an alleged policy that allows openly gay and feminine appearing inmates to be housed with violent and sexually predatory inmates.   Frye

alleges that the individual defendants named in the complaint all had personal knowledge of the facts of this case, his expressed concern for his physical safety, the manifest danger that White presented – and yet were collectively indifferent to the serious risks that he faced, and the assault that he eventually suffered.

## III.  <u>STANDARD OF REVIEW</u>

A motion to dismiss tests the legal sufficiency of a complaint.  It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted.  *Id.*  When reviewing a motion to dismiss, the court "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In reviewing a motion to dismiss, a court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

In deciding whether a complaint fails to state a claim upon which relief can be granted, the court is required to accept as true all factual allegations in the complaint as well as all reasonable inferences that can be drawn from the

complaint. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994).  These allegations and inferences are to be construed in the light most favorable to the plaintiff.   *Id.*   However, the court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Further, it is not proper to "assume that [the plaintiff] can prove facts that [he] has not alleged. . ." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following the rule announced in *Ashcroft v. Iqbal*, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  *Id*.  To determine the sufficiency of a complaint under the pleading regime established by the Supreme Court, the court must engage in a three step analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine

>       whether they plausibly give rise to an entitlement for
>       relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal*, 556 U.S. at 675, 679).

"In other words, a complaint must do more than allege the plaintiff's entitlement to relief" and instead must "'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

## IV.   DISCUSSION

### A.   The Eighth Amendment's Proscription Against Subjecting Inmates to the Unnecessary and Wanton Infliction of Pain

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment, and this proscription by extension protects prisoners against the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). "This constitutional limitation on punishment has been interpreted to impose a duty upon prison officials to take reasonable measures " 'to protect prisoners from violence at the hands of other prisoners.' " *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). Although "[i]t is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for a victim's safety,"

"[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.' " *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981)).  As such, "[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828.

In order for an inmate to prevail on an Eighth Amendment claim under a failure-to-protect theory, he must establish two elements.  First, he must demonstrate "that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834.  This first objective prong is satisfied when the alleged "punishment" is "objectively serious." *Id.*  Next, the prison officials who are alleged to have been deliberately indifferent "must have a sufficiently culpable state of mind." *Hamilton*, 117 F.3d at 746 (citing *Farmer*, 511 U.S. at 834).  To satisfy this second prong, an inmate-plaintiff must show that the defendants knew of and disregarded an excessive risk to inmate health or safety, meaning that "the official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Farmer*, 511 U.S. at 838.  Any analysis of conditions of confinement in examining Eighth Amendment cruel and unusual punishment claim must be grounded on totality of the circumstances. *Rhodes*, 452 U.S. at 363.

**B.** **Frye's Eighth Amendment Claim Should Be Permitted to Proceed Because He Has Sufficiently Alleged That He Was Incarcerated Under Conditions Posing a Substantial Risk of Serious Harm**

With these guidelines in mind, we turn to Frye's claims in this case. Frye alleges that between July 18, 2014, and approximately July 23, 2014, his conditions of confinement at SCI-Rockview violated the Eight Amendment to the United States Constitution because it deprived him of his basic safety needs. Frye contends that the individual defendants violated the Eighth Amendment by exhibiting deliberate indifference to an obvious risk to his health and safety, namely by housing him over his objection with a sexually violent inmate despite being aware of singular risks that he faced as a gay and feminine-appearing inmate. Indeed, Frye maintains that the defendants actively contributed to the manifest risk, which ultimately resulted in Frye suffering a violent rape at the hands of a known sexually predatory inmate, after Frye had already expressed his fears to prison officials. Additionally, Frye alleges that the deliberate indifference was reflected in the fact that despite having been put on notice about the potential for problems with White, not one guard or other official responded to Frye's screams for help for more than an hour after he was beaten and raped.

Frye points to several policies and procedures in place at SCI-Rockview which he argues facilitated and contributed to the substantial risk of serious harm that he claimed to face in the prison. First, although not necessarily fully

articulated, Frye appears to be arguing that SCI-Rockview maintains a policy that allows prison officials to approve individual celling requests without the permission of both inmates.  Frye contends that he was not aware that he was being moved into White's cell until the day of the transfer.  Frye seems to indicate that had he been aware of White's request to cell with him, he would have opposed that request.

Second, Frye argues that the policy which requires a 90-day waiting period before an inmate can be transferred to a different cell regardless of reports of assault or threats by a cellmate creates an unreasonable risk to inmate safety and well-being.  Frye contends that in his situation, he made the defendants aware that he had been assaulted and threatened by White almost immediately after being transferred into a cell with him, and that he asked at least two times to be transferred to a different cell but was denied relief on the basis of the stated policy. Frye also alleges that he was a particularly vulnerable inmate, who was a known homosexual who presented in a feminine manner, and yet was housed with a violent sexual predator at that predatory inmate's personal request.

Frye's third argument is that SCI-Rockview does not have an appropriate procedure for handling reports of assaultive sexual behavior.  As such, Frye alleges that his fears were dismissed and his complaints were ignored by all defendants prior to his rape – even after Frye had been placed in the cell with White and

threatened, which he had reported to prison staff. Frye asserts that he was not offered any additional protection and no preventative measures were taken after his safety was threatened by White.

Finally, Frye argues that placing openly gay and feminine-appearing prisoners in the same cell as violent and sexually predatory prisoners exposes those prisoners to a substantial risk of serious harm. Frye takes this argument one step further and seems to argue that placing openly gay and feminine-appearing prisoners anywhere in the general population of prisoners without protection also places prisoners at risk of serious harm.

Defendants Glunt and Pasquale support their motion to dismiss by arguing that (a) Frye has failed to demonstrate that they had personal knowledge of the events which underlie this claim or, in the alternative, (b) Frye has failed to meet the subjective requirement set forth for an Eighth Amendment claim, which is to show that prison officials acted with deliberate indifference to his health and safety. At this point, where our analysis is cabined and confined by the well-pleaded facts in the complaint, we disagree.

It is axiomatic that for personal liability to attach to a claim brought under § 1983, each defendant must have had personal involvement in the claimed constitutional violations, since liability cannot be predicated on the operation of

*respondeat superior.   Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown through allegations that the named defendants personally directed the allegedly unconstitutional conduct, or that they had actual knowledge of them and acquiesced to them.   *Id*.

Relatedly, for purposes of an Eighth Amendment failure-to-protect claim, an inmate must show subjective culpability on the part of each defendant, establishing that a prison official acted either deliberately or with deliberate indifference to inmate's health or safety, which requires that the official know of and disregard an excessive risk to inmate health or safety.   *Farmer*, 511 U.S. at 837.   As noted, an official must be both aware of facts from which inference could be drawn that a substantial risk of serious harm exists, and must also draw that inference.   *Id*.

Inmates seeking redress under Eighth Amendment for injuries inflicted by another inmate do not necessarily need to show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.   *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).   Furthermore, a prison official cannot escape liability for deliberate indifference by showing that, while he was aware of an obvious substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault.   *Farmer*, 511 U.S. at 843.   "A

substantial risk of serious harm 'may be established by much less than proof of a reign of violence and terror,' but requires more than a single incident or isolated incidents." *Blanchard v. Gallick*, 448 F. App'x 173, 177 (3d Cir. 2011) (citing *Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985)).

There are, however, several ways in which prison officials may escape liability for deliberate indifference claims. Officials can demonstrate, for example, that "they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Farmer*, 511 U.S. at 844; *Bistrian*, 696 F.3d at 367. "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012). "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable" on a failure-to-protect claim. *Farmer*, 511 U.S. at 845.

Upon consideration, we find that Frye has alleged enough factual matter to raise his claimed right to relief above a speculative level and to state a claim for deliberate indifference by the defendants. While we recognize that prison conditions may be "restrictive and even harsh" because they are "part of the

penalty that criminal offenders pay for their offenses against society," *Rhodes* at 347, we find that Frye has pleaded facts sufficient to state an Eighth Amendment violation by alleging that the particular conditions of his confinement constituted a substantial risk of serious harm.

In *Young v. Quinlan*, the Third Circuit affirmed the denial of summary judgment on an inmate's failure to protect claim where, among other things, he claimed to have "told [ten named prison officials] several times that he was concerned for his safety and needed to be placed in protective custody." *Young v. Quinlan*, 960 F.2d 351, 363 (3d Cir. 1992). In that case, the court found that each of those officials had failed to respond reasonably to stop the assaults by other inmates. *Id*. Similarly, in this case, Frye claims that defendants Pasquale and Glunt knew of and intentionally disregarded his numerous safety concerns. Frye alleges that "Steven Glunt [and] Unit Manager Pasquale . . . knew that plaintiff was an openly gay and extremely feminine appearing male and, as such, was especially vulnerable to sexual assault by other prisoners." (Compl. 5.) While this allegation, on its own, may not raise a right to relief above a speculative level, Frye supports his allegation with additional facts: he claims that Glunt and Pasquale were "aware of the fact that sexual assaults of inmates by other inmates took place on a regular basis at SCI-Rockview;" that Glunt and Pasquale knew that "White was a sexual predator and extremely violent prisoner and that placing him in a cell with plaintiff

raised a grave danger of assault and sexual assault of plaintiff by White;" and, most specifically, that Glunt and Pasquale "were made aware by plaintiff that Brian White had prevented plaintiff from leaving his cell, physically grabbed plaintiff, [and] showed anger that plaintiff told him he did not want to be in a sexual relationship." (Compl. 6.)   Further, Frye's complaint alleges that Glunt and Pasquale were specifically aware that "plaintiff was extremely fearful of assault and sexual assault by Brian White." *Id.*

At this stage of the litigation, where we are concerned only with the facts alleged in the complaint itself, we find that Frye has pled sufficient facts to demonstrate that Glunt and Pasquale both had personal knowledge of Frye's conditions of confinement and acted with deliberate indifference to his health and safety.  We do recognize that when inmates claim they are in danger, they confront prison officials with an "arduous task." *Young v. Quinlan*, 960 F.2d at 363. "[P]risoners may feign their fear of physical harm simply to manipulate a transfer," in the hope, for example, of obtaining more desirable living arrangements. *Id.*  But here, we find that Frye has set out sufficient factual allegations and circumstances, which we must accept as true, which would support an Eighth Amendment claim against Glunt and Pasquale by sufficiently alleging that each of these defendants had personal knowledge of the particular facts about Frye's vulnerability, White's known penchant for sexual and physical violence, and Frye's specific requests that

these defendants take steps to avoid unreasonable risks to his safety – all of which Frye claims they ignored, to his peril.  At this stage of the litigation, Frye's claims against these defendants are adequate to state a claim for deliberate indifference and should be allowed to proceed to discovery.

## V.   **RECOMMENDATION**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED THAT the defendants' partial motion to dismiss (Doc. 7.) be DENIED IN PART and GRANTED IN PART.  With respect to the plaintiff's Fourteenth Amendment violation claim and Reckless Disregard of Safety tort claim, it is recommended that those claims be dismissed.  With respect to the plaintiff's Eighth Amendment violation claim, it is recommended that the motion to dismiss be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3: Review of Reports and Recommendations of Magistrate Judges Addressing Dispositive Motions:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which

shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 30th day of September 2016

_**/S/ Martin C. Carlson**_
Martin C. Carlson
United States Magistrate Judge