# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEVON FRYE,** | CIVIL NO. 1:16-CV-780 |
| **Plaintiff,** | |
| | **(Magistrate Judge Carlson)** |
| v. | |
| **SGT. NATHANIEL WILT, et al.,** | |
| **Defendants.** | |

## MEMORANDUM OPINION

**I.     Introduction**

The Prison Litigation Reform Act, 42 U.S.C. § 1997 ("PLRA") requires that prisoners present their claims through an administrative grievance process prior to seeking redress in federal court. Specifically, the Act provides that: "No action shall be brought with respect to prison conditions under [§ 1983], or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In this prisoner civil rights case the parties present us with a legal question regarding the application of the PLRA's exhaustion requirement. On one hand, the plaintiff Devon Frye asks us to find that the exhaustion requirement does not apply to the claims asserted in his complaint because those claims regard

1

sexual abuse, or alternatively to excuse his failure to exhaust prison grievances and find that the grievance process was unavailable to him. (Doc. 36.) On the other hand, the defendants ask that we dismiss this case based upon Frye's acknowledged failure to pursue prison grievances. (Doc. 28.)

This legal dispute is further complicated by the fact that Pennsylvania Department of Corrections ("DOC") policies seem to prescribe several paths for inmate grievances, describing one grievance procedure in DC-ADM 804, the DOC's general grievance procedure, while prescribing another process in a separate policy, DC-ADM 008, for allegations regarding sexual assault. Thus, we are presented with an administrative and regulatory grievance structure that appears to potentially provide for parallel sexual assault grievance procedures.

Now pending before this court is a bifurcated motion for summary judgment filed by the defendants which highlights these legal issues and procedural ambiguities by seeking judgment in their favor based upon Frye's alleged failure to exhaust his administrative remedies at any time prior to bringing this action. (Doc. 26.) For the reasons set forth below and based on the circumstances surrounding Frye's case, we find that the defendants have not met their burden of showing that Frye's claims are subject to dismissal on the grounds of nonexhaustion and therefore the defendants' motion for summary judgment will be denied.

## II. Background and Statement of the Case

Plaintiff Devon Frye suffered a vicious sexual assault at the hands of cellmate Brian White in the early morning hours of July 23, 2014, while he was in the custody of the DOC at the State Correctional Institution at Rockview ("SCI-Rockview"), in Centre County, Pennsylvania. (Doc. 1, ¶¶ 2, 21.) Frye alleges that White was a convicted rapist who previously had been disciplined by prison staff for assaulting a cellmate. (Doc. 1, ¶¶ 9, 20.) White first requested to be celled with Frye on July 16, 2014, but that request was initially denied by defendant Pasquale, the Unit Manager at SCI-Rockview. (Doc. 1, ¶¶ 8-10.) Two days later, White submitted another request to be celled with Frye, unbeknownst to Frye himself, which was approved by defendant Sergeant Nathaniel Wilt. (Doc. 1, ¶ 11.) Frye alleges that Wilt failed to inform and consult Pasquale about this second request, in violation of prison policy. (Doc. 1, ¶¶ 12-13.) Shortly after being placed in White's cell, Frye asked Wilt for a new cell assignment on the grounds that White was becoming aggressive towards him and that he was not made aware of White's second cell assignment request. (Doc. 1, ¶ 15.) Wilt denied Frye's request on the basis of a prison policy that purportedly prohibited inmates from receiving new cell assignments twice within a 90 day period. (Doc. 1, ¶ 16.) On the second day that White and Frye were celled together, White was increasingly aggressive towards Frye, both by becoming physically confrontational and making sexual

3

advances. (Doc. 1, ¶ 17.) In response to these actions by White, Frye again requested to be reassigned to a new cell, which was again denied by Wilt. (Doc. 1, ¶¶ 18-19.)

Less than a week after being placed in White's cell, Frye was violently attacked and sexually assaulted by White. The attack on the morning of July 23, 2014 began with White punching and choking Frye, and continued with White covering Frye's mouth, throwing him down on the bed, pulling off his clothing, and raping him. (Doc. 1, ¶ 21.) Frye alleges that he yelled for help throughout the incident, but no prison staff responded until over an hour later. (Doc. 1, ¶ 22.) In April of 2015, White pleaded guilty to raping Frye and was sentenced to a term of 4-8 years in prison. (Doc. 1, ¶ 23.)

Frye commenced this action on May 9, 2016, asserting claims against DOC officials Superintendent Steven Glunt, Sergeant Wilt, Unit Manager Pasquale, and a John Doe Corrections Officer for their alleged deliberate indifference to Frye's safety in violation of the Eighth Amendment. (Doc. 1.) Specifically, Frye asserts that he was incarcerated under conditions that posed a substantial risk of serious harm to him as a feminine-appearing, openly-homosexual male when he was forced to cell with a known rapist and violent prisoner. (Doc. 1, ¶¶ 31-33.) Frye also brings a common law tort claim for reckless disregard of safety against all defendants. (Doc. 1, ¶¶ 40-43.)

The defendants filed a partial motion to dismiss Frye's initial complaint on June 20, 2016 (Doc. 7), which was granted on November 22, 2016. (Doc. 15.) Frye filed the instant amended complaint on October 27, 2016 (Doc. 13), which the defendants answered on December 1, 2016. (Doc. 17.) Among the affirmative defenses listed in the answer, the defendants claimed that Frye was "prohibited and barred from proceeding on his claims due to his failure to exhaust his administrative remedies." (Doc. 17, at 8.)

On June 2, 2017, the defendants filed a motion for leave to file bifurcated motions for summary judgment, seeking to separately contest administrative exhaustion and Frye's claims on the merits. (Doc. 24.) Along with the motion for bifurcation, the defendants filed the first of their bifurcated motions for summary judgment, which is now pending before this court, within which the defendants argue that they are entitled to judgment in their favor because Frye failed to exhaust administrative remedies prior to filing the instant claim. (Doc. 33.) This court granted the motion for bifurcation on June 8, 2017 (Doc. 33), and the issue of administrative exhaustion has been fully briefed. Accordingly, this first motion for summary judgment is now ripe for disposition.

## III. Discussion

### A. Administrative Exhaustion Under the PLRA

The Prison Litigation Reform Act, 42 U.S.C. § 1997 ("PLRA") requires prisoners to present their claims through an administrative grievance process prior to seeking redress in federal court. Specifically, the Act provides that: "No action shall be brought with respect to prison conditions under [§ 1983], or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In accordance with the PLRA, prisoners must comply with exhaustion requirements with respect to any claim that arises in the prison setting, regardless of the relief sought. See Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").

As the statute's language makes clear, the exhaustion of available administrative remedies prior to filing suit is mandatory. See Ross v. Blake, 136 S. Ct. 1850, 1853 (2016) ("That mandatory language means a court may not excuse a failure to exhaust[.]"); Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is

beyond the power of this court – or any other – to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.") (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)). An inmate who fails to exhaust administrative remedies is subsequently barred from litigating that claim in federal court. See Ghana v. Holland, 226 F.3d 175, 184 (3d Cir. 2000).

Moreover, the exhaustion requirement of the PLRA is one of "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 84 (2006). Failure to comply with the procedural requirements of the available grievance system will result in a claim being deemed procedurally defaulted. Id. at 90; Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004). An inmate cannot circumvent the PLRA's exhaustion requirement by failing to properly exhaust the prison's administrative review process, or by waiting until such remedies are no longer available to him. Woodford, 548 U.S. at 95. However, the Supreme Court has recently recognized a narrow exception to the exhaustion requirement built into the statutory language of the PLRA; a prisoner need not exhaust administrative remedies prior to filing a claim if the remedies are not available to the inmate. See Ross, 136 S. Ct. at 1853; see also Berry v. Klem, 283 F. App'x 1, 4-5 (3d Cir. 2008) ("[W]e made clear . . . that the PLRA requires exhaustion of all available remedies, not all remedies."). Likewise, where an inmate "fail[s] to receive even a response to the grievances

7

addressing . . . incidents, much less a decision as to those grievances, the [administrative remedy] process [i]s unavailable to him." Small, 728 F.3d at 273.

In this regard, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances." Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005). In Ross, the Supreme Court of the United States articulated three circumstances where a prison's administrative procedures are "unavailable" to inmates. Specifically, the Supreme Court noted that administrative remedies are not available where: 1) the administrate procedure operate "as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and 3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1859-60 (citing Booth v. Churner, 532 U.S. 731, 738, 741 n.6 (2001)). As to the second circumstance, the Supreme Court instructed that "[w]hen rules are so confusing that no reasonable prisoner can use them, then they are no longer available." Ross, 136 S. Ct. at 1860 (quotation omitted). The Supreme Court further noted that "Congress has determined that the inmate should err on the side of exhaustion"

where "an administrative process is susceptible of multiple reasonable interpretations," however, where a remedy becomes "essentially 'unknowable'— so that no ordinary prisoner can make sense of what it demands — then it is also unavailable." Id.; see also Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (holding that prisoner with failure to protect claim was entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (holding that exhaustion requirement was met where Office of Professional Responsibility fully examined merits of excessive force claim and correctional officers impeded filing of grievance).

Pennsylvania inmates, including those at SCI-Rockview, ordinarily must exhaust administrative remedies in accordance with a three-tiered grievance system set forth by the DOC in DC-ADM 804. (Doc. 27, ¶¶ 7, 8, 11; Doc. 29-1); see Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004). This grievance process is summarized in an Inmate Handbook, which is provided to each inmate. (Doc. 27, ¶ 8.) Pursuant to DC-ADM 804, inmates must first file grievances with the Facility Grievance Coordinator at the facility where the events that give rise to the complaint occurred. If the inmate is dissatisfied with the initial review of his grievance, he may appeal the decision to the Facility Manager (*i.e.*, the Superintendent). Upon receiving a decision from the Superintendent, the inmate

may file an appeal with the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within 15 working days of the Superintendent's decision. DC-ADM 804. "Proper exhaustion in Pennsylvania requires completion of a three-part procedure; initial review, appeal, and final review." Garcia v. Kimmell, 381 F. App'x 211, 213 n.1 (3d Cir. 2010) (citing Spruill, 372 F.3d at 232)). Again, compliance with the DOC's administrative grievance process is mandatory prior to bringing suit in federal court, and the failure to do so will result in that suit being subject to dismissal pursuant to the clear terms of the PLRA. Nyhuis, 204 F.3d at 73.

However, the DOC also provides other grievance processes relating to specific institutional concerns. For example, at various times, DOC regulations have prescribed separate processes for raising complaints regarding sexual assaults, DC-ADM 008, administrative custody status, DC-ADM 802, and allegations of inmate abuse, DC-ADM 001. Thus, there appear to potentially be several parallel tracks for inmates to follow when raising concerns that may be governed both by the broad grievance policy and by more specific grievance processes. Indeed, with respect to the inmate abuse policy statement, DC-ADM 001, the legal significance of these parallel grievance paths has been thoroughly discussed and, "while the court of appeals 'has not considered whether a Pennsylvania prisoner can exhaust his administrative remedies through DC–ADM

001, nor what steps would be necessary under that procedure,' a number of district courts 'have found that allegations of abuse do not have to be filed through all three levels of the DOC's grievance system pursuant to DC-ADM 804, if the inmate reports the abuse pursuant to DC-ADM 001.'" Robinson v. Tennis, No. 3:11-CV-1724, 2017 WL 4479349, at *6 (M.D. Pa. Sept. 8, 2017) (quoting Victor v. Lawler, 565 F. App'x. 126, 129 (3d Cir. 2014); Boyer v. Malet, No. 3:CV-16-0149, 2016 WL 4679013, at *3 (M.D. Pa. Sept. 7, 2016)), report and recommendation adopted, No. 3:11-CV-1724, 2017 WL 4478009 (M.D. Pa. Oct. 6, 2017).

Because it is an affirmative defense, a defendant has the burden of pleading and proving the nonexhaustion of available administrative remedies. Jones v. Bock, 549 U.S. 199, 216 (2007); Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002). "Proof of the defense of failure to exhaust must be made by a preponderance of the evidence." Cooper v. Martucchi, No. CIV.A. 15-267, 2015 WL 4773450, at *1 (W.D. Pa. Aug. 12, 2015). Whether an inmate has exhausted administrative remedies is a question of law to be determined by the court, even if that determination requires the resolution of disputed facts. See Small v. Camden County, 728 F.3d 265, 270-71 (3d Cir. 2013) ("[T]he District Court did not err by acting as the fact finder because exhaustion constitutes a preliminary issue for

which no right to a jury trial exists."); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010).

## B. The Defendants Have Not Established that Frye Failed to Exhaust Available Administrative Remedies

Turning to the case at bar, there is no dispute that the defendants raised the exhaustion issue as an affirmative defense in their answer, and that this motion for summary judgment is timely. There is also no dispute that Frye never exhausted his administrative remedies through DC-ADM 804 before filing suit, as Frye concedes that he did not file a complaint through the prison grievance system prior to commencing the instant action. (Doc. 27, ¶ 22; Doc. 36, ¶ 22.) Frye instead argues that effective remedies were not truly available to him because the DOC's applicable policies were so convoluted. (Doc. 36, at 10.) In support of this contention, Frye claims that the various DOC policies that address sexual abuse appear to exempt sexual abuse allegations from DC-ADM 804's grievance process, or at best provide conflicting and parallel procedures for how the allegations should be reported. (Doc. 36, at 10-11.)

As the Supreme Court has recently noted:

> [A]n administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. . . . When rules are so confusing that no reasonable prisoner can use them, then they're no longer available.

Ross v. Blake, 136 S. Ct. 1850, 1859 (2016) (internal quotation omitted). In Ross, the Supreme Court further explained that "when a remedy is . . . essentially "unknowable"—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable. Accordingly, exhaustion is not required." Ross, 136 S. Ct. at 1859–60 (citing Goebert v. Lee Cnty., 510 F.3d 1312, 1323 (11th Cir. 2007); Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available")). In a similar vein, exhaustion is unavailable where "officials . . . devise procedural systems (including the blind alleys and quagmires just discussed) in order to 'trip up all but the most skillful prisoners.'" Ross, 136 S. Ct. at 1860 (quoting Woodford v. Ngo, 548 U.S. 81, 102 (2006)). In light of this case law and the opaque DOC policies in place with respect to the reporting of sexual abuse, Frye asserts that exhaustion was unavailable to him.

Frye specifically argues that DOC policy DC-ADM 008, which implements the "Prison Rape Elimination Act," creates an exception to the grievance requirement that relieves inmates of the responsibility to grieve claims "regarding" sexual abuse. (Doc. 36, at 10.) DC-ADM 008 provides, in pertinent part, that: "An allegation of sexual abuse, sexual harassment or retaliation by other inmates or staff for reporting sexual abuse and sexual harassment, and staff neglect or violation of responsibilities that may have contributed to such incidents can be

13

reported by several means: verbal, written, anonymous, or by a third party." (Doc. 29-6 at 29 (emphasis added).) While the language of DC-ADM 008 is permissive in terms of providing several different methods by which sexual abuse-related allegations may be reported, DC-ADM 804 § 1(A)(2) clearly states that the DOC's Inmate Grievance System "is not meant to address incidents of an urgent or emergency nature including allegations of sexual abuse as defined in D[OC] policy DC-ADM 008, 'Prison Rape Elimination Act.'" (Doc. 29-1, at 7 (emphasis in original).) DC-ADM 804 § 1(A)(6) further reiterates that "[a] grievance regarding sexual abuse will not be addressed through the Inmate Grievance System and must be addressed through Department policy DC-ADM 008." (Doc. 29-1, at 8 (emphasis added).) Frye thus contends that because his claims against the defendants pertain to their alleged deliberate indifference to the serious risk that he would be sexually assaulted by White, those claims all "regard" sexual abuse and he therefore was not permitted to grieve the claims under DC-ADM 804. (Doc. 36, at 9-12.) Moreover, Frye argues that to the extent that the DOC's policies outlined in the Inmate Handbook, DC-ADM 008, and DC-ADM 804 conflict with one another, these inconsistencies rendered the grievance procedure unavailable because it "was clearly not understandable to a normal inmate." (Doc. 36, at 11.)

For their part, the defendants stake a more categorical view. They maintain that DC-ADM 804 was the exclusive grievance procedure available to Frye.

14

Accordingly, under the defendants' view, the claims Frye asserts in this complaint needed to be grieved under DC-ADM 804. (Doc. 28, at 5-7; Doc. 37, at 3-9.) Specifically, the defendants contend that Frye's claims regarding their alleged failure to protect him from rape at the hands of another inmate do not constitute "sexual abuse" as defined in DC-ADM 008. (Doc. 37, at 6.) Because Frye's claims against the defendants were not claims of "sexual abuse," the defendants assert that the PREA's exception to the DC-ADM 804 grievance requirement did not apply. (Doc. 37, at 6.) The defendants further argue that even if the DOC's various policies caused Frye confusion, any ambiguity in terms of the proper procedure to follow was not substantial enough to warrant excusing Frye's failure to grieve these claims pursuant to DC-ADM 804. (Doc. 37, at 7-8); see also Ross, 136 S. Ct. at 1859 ("When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion.").

The defendants urge this court to narrowly construe the realm of claims "regarding" sexual abuse, so as to exclude the failure to protect claims that Frye now asserts. However, this argument, in our view, fails for two reasons. First, as a factual matter, and construing the facts in a light most favorable to Frye, it appears that the plaintiff was voicing a concern to staff that he feared he would be raped by

White. As a matter of fact it is difficult to see how a potential rape claim could not be seen as an issue "regarding" sexual abuse.

Moreover, as a legal matter at least one federal court within Pennsylvania has expressed skepticism of this narrow interpretation of which claims "regard" sexual abuse. In Bucano v. Austin, the United States District Court for the Western District of Pennsylvania declined to dismiss a plaintiff's claims that prison officials were deliberately indifferent to the risk that she would be sexually abused where the plaintiff failed to fully exhaust administrative remedies pursuant to DC-ADM 804. CV 15-67 ERIE, 2017 WL 4563948, at *8 (W.D. Pa. Oct. 13, 2017). The court found that the plaintiff could not be penalized for failing to follow the procedural requirements of DC-ADM 804 because the defendants told her that her claims "related to" sexual abuse and therefore fell under the PREA. Bucano, 2017 WL 4563948, at *8. Although Frye does not allege that prison administrators actively misrepresented the grievance process to him here, we nonetheless find the wording of DC-ADM 008 to be so opaque—particularly as to which types of claims "regard" sexual abuse and therefore do not need to be grieved under DC-ADM 804—that the administrative remedy scheme with regard to these types of claims is, "practically speaking, incapable of use." Ross, 136 S. Ct. at 1859-60. Indeed, at least one court within the Middle District of Pennsylvania has previously found that DOC's failure to resolve the ambiguity between DC-ADM 804's

16

traditional grievance requirement and the special rules for abuse claims has resulted in "systemic confusion" that renders the administrative remedy process unavailable. Moore v. Lamas, No. 3:12-CV-223, 2017 WL 4180378, at *10, 18-20 (M.D. Pa. Sept. 21, 2017); see Ross, 136 S. Ct. at 1860 ("When rules are so confusing that no reasonable prisoner can use them, then they are no longer available.").

This court also notes that a broader interpretation of which claims "regard" sexual assault is entirely in keeping with the PREA, in that the PREA's implementing regulations make clear that the DOC "shall provide ***multiple internal ways for inmates to privately report sexual abuse*** and sexual harassment, retaliation by other inmates or staff for reporting sexual abuse and sexual harassment, ***and staff neglect or violation of responsibilities that may have contributed to such incidents***." 28 C.F.R. § 115.51(a) (emphasis added). Given that allegations of prison staff negligence and indifference contributing to sexual abuse were considered to be within the ambit of the PREA, and that the DOC promulgated DC-ADM 008 to implement federal PREA standards, we find that DC-ADM 008's reference to claims "regarding" sexual abuse encompasses claims that prison staff were deliberately indifferent to a serious risk of sexual assault. (Doc. 29-6, at 12.)

Further, we acknowledge that a treatment of the PLRA's exhaustion in this

context that recognizes DC-ADM 804 and DC-ADM 008 as two independent parallel paths—either of which may be used to satisfy administrative exhaustion requirements—is entirely in accord with the approach taken by many courts, including this court, when construing the DOC's general grievance procedure, DC-ADM 804, with its inmate abuse reporting policy, DC-ADM 001. In this factually similar setting, we have held that full compliance with one of these parallel procedures satisfies the legal exhaustion requirements imposed by the PLRA. See Robinson v. Tennis, No. 3:11-CV-1724, 2017 WL 4479349, at *6 (M.D. Pa. Sept. 8, 2017), report and recommendation adopted, No. 3:11-CV-1724, 2017 WL 4478009 (M.D. Pa. Oct. 6, 2017) (collecting cases).

Although the defendants have argued in their briefs that Frye's failure to protect claims should be treated differently than other claims involving allegations of sexual abuse, they have not contended that claims falling within the scope of DC-ADM 008 also need to be grieved under DC-ADM 804. Nor have the defendants argued that Frye failed to comply with DC-ADM 008's grievance process. Likewise, although Frye has argued that he could properly exhaust this claim under DC-ADM-008, he has not specifically averred that he took steps to fully comply with DC-ADM 008's grievance procedure. Therefore, this issue is not presently before us, and we will deny this summary judgment motion without prejudice to further litigation of the question of whether Frye fully complied with

18

DC-ADM 008. Instead, having concluded that Frye's claims against the defendants "regarded" sexual abuse under DC-ADM 008, we note that "filing an Official Inmate Grievance pursuant to DC-ADM 804 is not required for inmates alleging sexual harassment and/or sexual abuse." Bucano v. Austin, No. CV 15-67 ERIE, 2017 WL 4563948, at *4 (W.D. Pa. Oct. 13, 2017) (citing McCain v. Wetzel, 2012 WL 6623689, at *6 (M.D. Pa. Oct. 26, 2012); Knauss v. Shannon, 2010 WL 569829, at *7 (M.D. Pa. Feb. 12, 2010)). While it is undisputed that Frye failed to exhaust administrative remedies under DC-ADM 804, "DC-ADM 804 is not the only way to exhaust administrative remedies" regarding claims of inmate sexual abuse—to the extent that DC-ADM 804 is even available as a remedy to address sexual abuse claims at all. McCain v. Wetzel, No. 1:12-CV-00789, 2012 WL 6623689, at *6 (M.D. Pa. Oct. 26, 2012), report and recommendation adopted, No. 1:12-CV-0789, 2012 WL 6623688 (M.D. Pa. Dec. 19, 2012); see Moore v. Lamas, No. 3:12-CV-223, 2017 WL 4180378, at *10 (M.D. Pa. Sept. 21, 2017) ("[T]he Court concludes DC-ADM 001 was an appropriate administrative remedy which an inmate could use to exhaust claims of abuse pursuant to the PLRA during the relevant time period."). By relying exclusively on the fact that Frye did not file a grievance pursuant to DC-ADM 804, the defendants did not address whether Frye exhausted administrative remedies by any other means in light of DC-ADM 008. See Moore v. Lamas, No. 3:12-CV-223, 2017 WL 4180378, at *18-20 (M.D. Pa.

Sept. 21, 2017). This court therefore finds that the defendants have not established by a preponderance of the evidence that Frye failed to exhaust administrative remedies. Thus, Frye will be permitted to proceed on his deliberate indifference claims against the defendants.

## IV. Discussion

For the foregoing reasons, the defendants' motion for summary judgment on the basis of Frye's purported failure to exhaust administrative remedies is DENIED.

An appropriate order will follow.

So ordered this 15th day of December, 2017.

>  /s/ Martin C. Carlson
> Martin C. Carlson
> United States Magistrate Judge