## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DEVON FRYE,                          :     Civil No. 1:16-CV-780
                                     :
    Plaintiff                    :
                                     :     (Magistrate Judge Carlson)
v.                                   :
                                     :
SGT. NATHANIEL WILT, et al.,         :
                                     :
    Defendants.                  :


## MEMORANDUM OPINION

### I.    Introduction

The plaintiff, Devon Frye, was an inmate incarcerated at the State Correctional Institution at Rockview ("SCI-Rockview") in the Pennsylvania Department of Corrections ("DOC"). He brings this suit against several DOC officials pursuant to 42 U.S.C. § 1983, alleging that they were deliberately indifferent to a serious risk of harm in violation of the Eighth Amendment of the United States Constitution. Specifically, Frye alleges that the defendants were deliberately indifferent with respect to his cell assignment and the subsequent failure to remove him from the cell, which he contends resulted in him being raped by his cell mate.

The defendants now move for summary judgment, arguing that Frye failed to exhaust his administrative remedies and that Frye's Eighth Amendment claim has no merit. For the reasons that follow, we find there are genuine issues of material fact that preclude summary judgment at this time. Accordingly, the motion for summary judgment will be denied.

## II.     Background and Statement of the Case

Construing the evidence in a light most favorable to the plaintiff, as we are required to do when considering a defense motion for summary judgment, the evidence reveals that Devon Frye was sexually assaulted by his cellmate, Brian White, on July 23, 2014, while he was incarcerated at SCI-Rockview in Centre County, Pennsylvania. (Doc. 13, ¶¶ 2, 21.) White had submitted an inmate cell agreement request to be celled with Frye on July 16, 2014, but the request was denied by Unit Manager Pasquale because a cell was not available. (Doc. 55, Ex. E.) After this request was denied, White allegedly submitted another cell agreement request two days later to Sergeant Wilt, without Frye's knowledge, and Wilt approved the cell agreement. (Doc. 13, ¶ 11.) Frye alleges that Wilt failed to receive Unit Manager Pasquale's approval of this cellmate change, despite the fact that such consent is required by the rules at SCI-Rockview. (Id., at ¶ 13.) Further, Frye alleges that, at that time, White was incarcerated for a conviction of rape and was known to be an

assaultive prisoner who had been disciplined at the prison for assaulting a prior cellmate. (Id., at ¶¶ 9, 20.)

It is alleged that shortly after being transferred to White's cell, Frye asked Sergeant Wilt to remove him from the cell because White was becoming overly aggressive and because Frye had not been made aware of White re-submitting the cell agreement request to Wilt after it had been denied by Pasquale. (Doc. 13, ¶ 15.) Wilt allegedly told Frye that he could not be moved from the cell for ninety days. (Id., at ¶ 16.) On or about the second day that Frye was celled with White, Frye claims that White became aggressive and prevented Frye from exiting the cell by physically grabbing him as he was attempting to leave. (Id., at ¶ 17.) This occurred after Frye denied White's request to have a sexual relationship with him. (Id.) Frye again asked Wilt to remove him from the cell, after informing him of the aforementioned incident, and apparently indicated that he was very fearful of White and was in grave physical danger if he were to be kept in the cell with White. (Id., at ¶ 18.) Wilt again denied Frye's request, explaining that he could not be removed from the cell for ninety days. (Id., at ¶ 19.)

On July 23, 2014, White violently raped Frye, after striking him, choking him, covering his mouth to prevent him from screaming, punching him, and throwing him on the bed face down. (Id., at ¶ 21.) At the time of the incident, Frye yelled and screamed for officers to help him, but no officer responded for at least an hour. (Id.,

at ¶ 22.) On April 24, 2015, White pleaded guilty to raping Frye and was sentenced to four to eight years in prison. (Id., at ¶ 23.) Frye alleges that when he reported the rape to prison officials, he told someone in the security office about his two removal requests to Wilt, as well as Wilt's response on both occasions that Frye could not be removed for ninety days. (Doc. 8, Ex. B, at 108.)

On May 9, 2016, Frye filed this action, asserting claims against Superintendent Glunt, Sergeant Wilt, Unit Manager Pasquale, and Corrections Officer John Doe for Eighth and Fourteenth Amendment violations related to his cell assignment and subsequent assault. (Doc. 1). The defendants filed a partial motion to dismiss Frye's complaint on June 20, 2016, which this Court granted in part and denied in part. (Doc. 7.) On November 11, 2016, the Court dismissed Frye's Fourteenth Amendment claims and "reckless disregard for safety" tort claim but denied the motion in all other respects. (Doc. 15.) Frye filed an Amended Complaint on October 27, 2016 (Doc. 13), which the defendants subsequently answered on December 1, 2016. (Doc. 17.)

On June 2, 2017, the defendants filed a motion for leave to file bifurcated motions for summary judgment in order to separately contest administrative exhaustion and the merits of Frye's claims. (Doc. 24.) This Court granted the motion to bifurcate on June 8, 2017, (Doc. 33.), but denied the first motion for summary judgment, which was based on Frye's failure to exhaust administrative remedies, on

December 15, 2017 without prejudice. (Doc. 41.) At that time we explained that "[w]hile . . . Frye failed to exhaust his administrative remedies under DC-ADM 804 . . . 'filing an Official Inmate Grievance pursuant to DC-ADM 804 is not required for inmates alleging sexual harassment and/or sexual abuse.'" (Doc. 40, at 19.) Specifically, we found that either DC-ADM 804 or DC-ADM 008 may be used to satisfy administrative exhaustion requirements. (Id., at 18.)

On March 22, 2019, the defendants filed the instant motion for summary judgment, claiming that Frye failed to exhaust his administrative remedies under DCM-008 and that his Eighth Amendment deliberate indifference claim against is meritless. (Doc. 52.) For his part, Frye concedes summary judgment with respect to Defendants Glunt and Pasquale. (Doc. 59, ¶ 1.)[1] However, Frye maintains that Defendant Wilt was deliberately indifferent to a serious risk of harm with respect to the initial cell assignment and subsequent failure to remove him from the cell, which allegedly caused Frye to suffer the loss and violation of his constitutional rights. (Doc. 13, ¶ 37.)

After a review of the record, we find that there are genuine disputes of material fact that preclude summary judgment on Frye's remaining claims at this

---

[1] We also note that Frye has not identified any individual in place of the unnamed John Doe correctional officer defendant. He simply asserts that a correctional officer should have been on duty the night of the assault. (Doc. 55-8, at 69-70). Because Frye has still not identified this defendant, we will also dismiss Defendant John Doe. See Blakeslee v. Clinton Cnty., 336 F. App'x 248 (3d Cir. 2009).

time. Specifically, the defendants have not shown as a matter of law that Frye has failed to exhaust his administrative remedies. Further, a stark factual dispute exists concerning whether Sergeant Wilt knew of a serious risk of harm to Frye. Thus, for the following reasons, the defendant's motion for summary judgment will be granted, in part, and denied, in part.

### III.   Standard of Review

#### A. Summary Judgment

The defendants have filed a motion for summary judgment in this case. Rule 56 of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a

material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence, or assess credibility, when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most

favorable to the opposing party, <u>Anderson</u>, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. <u>Big Apple BMW, Inc. v. BMW of North America, Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. <u>Anderson</u>, 477 U.S. at 255. Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. <u>Id.</u> at 252; <u>see also</u> <u>Big Apple BMW</u>, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

<u>Id.</u> In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (internal quotation marks omitted); <u>NAACP v. North Hudson Reg'l Fire & Rescue</u>, 665 F.3d 464, 476 (3d Cir. 2011).

It is against these legal benchmarks that we assess the defendants' motion.

## IV.  <u>Discussion</u>

As we have noted, Frye concedes that he does not have sufficient evidence to proceed with his claims against Defendants Glunt and Pasquale. (Doc. 59, at 23.) Accordingly, we will grant summary judgment as to these defendants. Additionally, Frye has failed to identify the John Doe defendant, who he claims is a correctional officer that should have been on the block the night of the assault. (Doc. 55-8, at 70.) On this score, the Court of Appeals has stated that the "[u]se of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified. . . . If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed." <u>Blakeslee v. Clinton Cnty.</u>, 336 F. App'x 248, 250 (3d Cir. 2009) (citing <u>Klingler v. Yamaha Motor Corp., U.S.A.</u>, 738 F.Supp. 898, 910 (E.D. Pa. 1990) and <u>Scheetz v. Morning Call, Inc.</u>, 130 F.R.D. 34, 37 (E.D. Pa. 1990)). Here, Frye admits that he does not have knowledge of any particular individual that was allegedly supposed to be on the block on the night of the assault. (Doc. 55-8, at 69-70.) Thus, we will dismiss the John Doe defendant, as reasonable discovery has not unveiled the identity of a proper defendant.

However, as to the Eighth Amendment claim against Sergeant Wilt, there are stark, irreconcilable factual disputes in this litigation that preclude summary judgment at this time.

## A. **Frye's claim cannot be dismissed on exhaustion grounds at this stage.**

The defendants argue that Frye has failed to exhaust his administrative remedies pursuant to DC-ADM 008. Specifically, they allege that Frye never made a verbal report to a staff member, submitted a DC-135A, Inmate Request to Staff Member, or made a report to the Sexual Abuse Reporting Phone line. To the contrary, Frye alleges that he made two verbal reports to Wilt, in which he reported that he felt uncomfortable celling with White and requested to be removed from White's cell because he feared for his safety. Frye also alleges that he told other prison officials that he reported his safety concerns to Wilt, and that Wilt denied his requests to be removed from the cell.

The Prison Litigation Reform Act, 42 U.S.C. § 1997 ("PLRA"), provides, in pertinent part, that: "No action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). This exhaustion requirement is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases . . . is now mandatory."); Booth v. Churner, 532 U.S. 731,

738 (2001) ("The available remedy must be exhausted before a complaint under §
1983 may be entertained."). An inmate who fails to exhaust his administrative
remedies is subsequently barred from litigating that claim in federal court. Ghana v.
Holland, 226 F.3d 175, 184 (3d Cir. 2000).

The PLRA requires "proper" exhaustion, which means using all of the steps
that are available and using them properly. Woodford v. Ngo, 548 U.S. 81, 84
(2006). A prisoner need only exhaust those administrative remedies that are actually
"available" to him. Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003). "[P]rison
grievance procedures supply the yardstick for determining what steps are required
for exhaustion." Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007) (quoting
Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004)). "[T]o properly exhaust
administrative remedies, prisoners must 'complete the administrative review process
in accordance with the applicable procedural rules'" as they are "defined . . . by the
prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting
Woodford v. Ngo, 548 U.S. 81, 88, (2006)).

Failure to exhaust administrative remedies under the PLRA is an affirmative
defense that a defendant must plead and prove. Jones, 549 U.S. at 216. The defense
of failure to exhaust must be proven by a preponderance of the evidence. Cooper v.
Martucchi, No. CIV.A. 15-267, 2015 WL 4773450, at *1 (W.D. Pa. Aug. 12, 2015).
Furthermore, "exhaustion is a question of law to be determined by a judge, even if

that determination requires the resolution of disputed facts." <u>Small v. Camden County,</u> 728 F.3d 265, 269 (3d Cir. 2013).

This Court found that full compliance with the DC-ADM 008 satisfies the legal exhaustion requirements imposed by the PLRA. (Doc. 40, at 18-19.) DC-ADM 008 provides, in pertinent part, that: "An allegation of sexual abuse, sexual harassment, or retaliation by other inmates or staff for reporting sexual abuse and sexual harassment, and staff neglect or violation of responsibilities that may have contributed to such incidents can be reported by several means: verbal, written, anonymous, or by a third party." (Doc. 55, Ex. O-7, at 29.) According to DC-ADM 008, methods of reporting for inmates include: (1) a verbal report to a staff member; (2) submitting a DC-135A, Inmate Request to Staff Member; and/or (3) Sexual Abuse Reporting Phone line. (Doc. 57, Ex. O-7, at 30.)

Here, Frye agrees that he was required to "talk to somebody" regarding the alleged sexual assault, according to DC-ADM 008. (Doc. 55, Ex. B, at 103.) On this score, Frye alleges that he had two conversations with Wilt before the date of the rape, during which he requested to be removed from White's cell because he feared for his safety. (<u>Id.</u>, at 45.) The second conversation was related to sexual abuse, harassment, and retaliation. (<u>Id.</u>) Specifically, on or about the second day that Frye was celled with White, White became aggressive and prevented Frye from exiting the cell by physically grabbing him as he was attempting to leave after Frye denied

White's request to have a sexual relationship with him. (Id., at ¶ 17.) Frye alleges that he asked Wilt, a second time, to remove him from the cell after informing him of the aforementioned incident, and indicated that he was very fearful of White and was in grave physical danger if he were to be kept in the cell with White. (Id., at ¶ 18.) However, Wilt again denied Frye's request, explaining that he could not be removed from the cell for ninety days. (Id., at ¶ 19.)

After the rape occurred on July 23, 2014, Frye went to the "DW," where the Lieutenants are located, to report the incident. (Doc. 55, Ex. B, at 58.) Frye claims that he told "the Lieutenant that was over there" that he had spoken to Wilt about his concerns that he had with White. (Id., at 100.) When Frye was asked whether he ever reported in a written statement what occurred with Wilt, he said that he did not. (Id.) However, Frye alleges that he told someone who interviewed him in the security office about the conversations that he had with Wilt about White becoming physical with Frye. (Id., at 108.) He also reported the rape to Nurse Coffman, who completed an Extraordinary Occurrence Report. (Id., at 77.) In that report, Nurse Coffman indicates that Frye denied anything unusual prior to the assault on July 23. (Id., at 79.) However, Frye denies saying that to Nurse Coffman. (Id., at 81.) Frye reiterated the allegation that he told Wilt about the unusual occurrences prior to the assault. (Id.) Frye did not submit a DC-135A, Inmate Request to Staff Member or report to the Abuse Reporting Phone line. (Id., at 58-59.)

Contrary to Frye's testimony, Wilt alleges that Frye never came to him, indicating that he was in fear for his life. (Doc. 55, Ex. D-1, at 57.) Wilt claims that if Frye had truly reported that he was being threatened with assault, he would have kept Frye and White separated, called for a Lieutenant, and the Lieutenant would have taken over. (Id.) Wilt further denies that he would advise an inmate that they must wait ninety days before they can change cells. (Id. at 61.) Instead, Wilt stated that he would try to find out why the inmate wants to move, and if it is not for a good reason, then he would advise him that he has to wait ninety days before he can move. (Id.) In addition, each officer that was involved in the investigation of Frye's rape—Probst, Churner and Vance—have provided declarations in this matter, in which they all state that Frye never reported that Wilt failed to remove him from the cell because if he had, that allegation would have been investigated not only by the Department internally, but also by the Pennsylvania State Police. (Doc. 55, Exhibits F, G, P.)

We are reminded that exhaustion is an affirmative defense that must be pleaded and proven by the defendants. Jones, 549 U.S. at 216. Additionally, at this stage, we must view the facts in a light favorable to Frye as the non-movant. A.W. v. Jersey City Pub. Schs., 486 F.3d at 794. Here, in our view, the defendants have not shown as a matter of law that Frye failed to exhaust his administrative remedies. Instead, the defendants have presented the declarations of several individuals who claim that Frye did not mention to them that he had conversations with Wilt prior to

the assault, which contradict Frye's version of events. On this score, the Court of Appeals has stated that, "[a]lthough courts may resolve factual disputes on questions of exhaustion, see Small [v. Camden County], 728 F.3d [265, 271 (3d Cir. 2013)], the District Court erred to the extent that it concluded that [the plaintiff's] allegations were not credible." Smith v. Lagana, 572 F. App'x 130, 133 n. 3 (3d Cir. 2014) (citing Anderson, 477 U.S. at 255)). In this case, resolving the factual dispute as to the exhaustion of Frye's claims would require us to determine the credibility of both Frye and the individuals that the defendants offer to show that Frye did not exhaust his remedies. This we cannot do through a motion for summary judgment where we are obliged to resolve factual disputes in favor of the non-moving party. See Anderson, 477 U.S. at 252. Therefore, because the defendants have not shown as a matter of law that Frye failed to exhaust his administrative remedies, we will not grant the motion on exhaustion grounds. Rather resolution of this factually contested issue must await trial or an evidentiary hearing.

### B. There are genuine issues of material fact that preclude summary judgment on Frye's Eighth Amendment claim against Wilt.

Frye argues that the defendants were deliberately indifferent to a serious risk of harm with respect to his cell assignment with White and the failure to remove him from the cell after he allegedly requested to be removed. Specifically, Frye argues that Wilt was deliberately indifferent in approving Frye and White to cell together and further for failing to remove Frye from the cell after Frye allegedly made two

reports to Wilt regarding incidents between White and Frye, in which Frye claimed he feared for his life. For their part, the defendants argue that Wilt was not deliberately indifferent to a serious risk of harm in the cell assignment because Wilt did not have a reason to believe that Frye and White should not be celled together. In addition, Wilt claims that Frye never indicated to him that he feared for his safety.

The Eighth Amendment of the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. However, while prison officials have a duty to protect prisoners from violence, injury inflicted upon a prisoner by another prisoner itself does not amount to an Eighth Amendment violation. See Farmer v. Brennan, 511 U.S. 825, 833-34 (1994). Instead, a plaintiff must prove deliberate indifference on the part of prison officials. Beers Capitol v. Whetzel, 256 F.3d 120, 131 (3d Cir. 2001) (citing Farmer, 511 U.S. at 837).

A claim that a prison official was deliberately indifferent must meet two requirements. Farmer, 511 U.S. at 834. First, "the alleged deprivation must be objectively, sufficiently serious." Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). "For a claim of failure to prevent harm . . . the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. (see Helling v. McKinney, 509 U.S. 25, 35 (1993)). The second requirement is that the prison official must have a "sufficiently culpable state of mind." Id. (quoting Wilson, 501 U.S. at 298). In order to satisfy the second requirement, an inmate must show

that the defendants "knew of and disregarded an excessive risk to inmate health or safety." Id. at 837. "The official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." Id. Therefore, the knowledge element is subjective, not objective. Beers-Capitol, 256 F.3d at 133.

 "An official's failure to alleviate a significant risk that he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer, 511 U.S. at 838. However, a factfinder may conclude that a prison official knew of a substantial risk from the mere fact that the risk was obvious. Id. at 842. "[A] court considering an Eighth Amendment challenge to conditions of confinement must examine the totality of the circumstances." Rhodes v. Chapman, 452 U.S. 337, 362-63 (1981). Additionally, the officials can rebut an allegation of deliberate indifference by proving that they were "unaware of an obvious risk to inmate health or safety." Farmer, 511 U.S. at 844.

An inmate can plead and prove deliberate indifference by use of either circumstantial or direct evidence. Kedra v. Schroeter, 876 F.3d 424, 441 (3d Cir. 2017). On this score, the Court of Appeals has stated:

Three broad categories of circumstantial evidence are probative of deliberate indifference: (1) evidence that the risk was obvious or a matter of common sense, (2) evidence that the actor had particular professional training or expertise, and (3) evidence that the actor was

18

expressly advised of the risk of harm and the procedures designed to prevent that harm and proceeded to violate those procedures.

Id. Such circumstantial evidence must affirmatively show that the defendant "must have recognized the excessive risk and ignored it," as opposed to merely showing that "defendants should have recognized the risk and responded to it." Beers-Capitol, 256 F.3d at 138.

In this case, Frye alleges that Wilt was deliberately indifferent to a serious risk of harm with respect to his cell assignment with White. (Doc. 13, ¶ 37.) At the outset, we note that it is undisputed that Frye suffered serious harm when he was sexually assaulted by White. Frye contends that he did not sign the second cell agreement, and Wilt approved it anyway. He further claims that there is evidence that would have made it obvious to Wilt that there was a serious risk of harm in approving the cell agreement, including the facts that Frye is a very feminine-appearing and openly-gay male, while White is known to be an assaultive prisoner and had previously been disciplined at the prison for assaulting a prior cellmate. (Doc. 13, ¶¶ 7, 9.) Additionally, White was in prison for involuntary deviate sexual intercourse, and he had approximately twenty-six misconduct violations—at least four or five of which are for physical assault—while in prison. (Doc. 55, Ex. D-1, at 26, 33.)

Frye further argues that defendants were deliberately indifferent to a serious risk of harm in his failing to remove him once he was celled with White, despite his pleas to be removed from the cell. (Doc. 13). Frye alleges that he had two

19

conversations with Wilt before the date of the rape, during which he requested to be removed from White's cell because he feared for his safety. (Doc. 55, Ex. B, at 45.) Shortly after being transferred to White's cell, Frye asked Wilt to remove him because White was becoming overly aggressive and because Frye had not been made aware of White re-submitting the cell agreement request to Wilt after it had been denied by Pasquale. (Doc. 13, ¶ 15.) Frye alleges that Wilt told him that he could not be moved from the cell for ninety days. (Id., ¶ 16.) After the second incident, in which White physically prevented Frye from leaving the cell, Frye again requested to be removed for safety reasons and was told by Wilt that he could not be moved for ninety days. (Id., ¶ 19.)

For his part, Wilt does not dispute that he approved the cell agreement between Frye and White. (Doc. 54, at 8.) Wilt claims that Frye and White appeared before him requesting to cell with another. (Doc. 55, Ex. D-1, at 24-25.) According to Wilt, there was nothing in the prison policy that precluded him from approving a cell agreement when the unit manager was not working. (Doc. 54, at 8.) Thus, Wilt approved the second cell agreement because Unit Manager Pasquale was not working, and there was an open cell. (Doc. 55, Ex. D-1, at 41.)

Wilt further contends that there was no evidence that would have made it obvious to him that there was a danger in approving the cell agreement. (Doc. 54 at 8.) He claims that Frye did not appear to be gay while at Rockview. (Doc. 55, Ex.

D-1, at 14.) Indeed, Frye never told anyone he was gay, including Wilt. (Doc. 55, Ex. C, at 85.) Frye also never indicated that he was at risk for sexual victimization on his Initial Reception Screening. (Doc. 55, Ex. B, at 87-88.) Wilt testified at his deposition that, when approving a cell agreement, he checks to see whether a cell is available, and takes into consideration factors such as the inmates' criminal history, misconduct records, and size (height and weight). (Doc. 55, Ex. D-1, at 40.) Wilt checked if either Frye or White had a history of harming their cell mates, which is known as a "Z code," and found no indications that they should not be celled together. (Id., at 25.) Furthermore, while Wilt was aware that White had been convicted of involuntary sexual intercourse, he testified that prior convictions are not considered in regard to cell assignments, because if they were, there would be a need for more cells and bigger jails. (Id., at 26.) Wilt also noted that White's offense was committed against a female, suggesting that White is heterosexual. (Id., at 26.) In this case, White's misconduct violations did not affect Wilt's decision to put him in a cell with Frye. (Id,. at 34.)

Additionally, contrary to Frye's testimony, Wilt alleges that Frye never came to Wilt, indicating that he was in fear for his life. (Id., at 57.) Wilt claims that if Frye had truly reported that he was being threatened with assault, he would have kept Frye and White separated, called for a Lieutenant, and the Lieutenant would have taken over. (Id., at 57.) Wilt further denies that he would advise an inmate that they

must wait ninety days before they can change cells. (Id., at 61.) In addition, each officer that was involved in the investigation—Probst, Churner and Vance—have provided declarations in this matter, in which they all stated that Frye never reported to them that Wilt failed to remove him from the cell, because if he had, the allegation would have been investigated not only by the Department internally, but also by the Pennsylvania State Police. (Doc. 55, Exhibits, F, G, P.)

Again, we are mindful that we must view the facts in a light favorable to Frye, the non-movant, at this stage. Viewed through this analytical lens, we believe there exist genuine issues of material fact regarding whether Wilt knew of the risk to Frye's safety. This is a key element, and the parties clearly dispute the facts surrounding this element. These issues of fact will likely turn on a credibility assessment of each of the parties, which is something we are not permitted to undertake at this stage. See Anderson, 477 U.S. at 252. Given the discrepancies in each parties' respective view of the events that occurred, and viewing the facts in a light favorable to Frye as we must at this stage, a reasonable juror could find that Wilt was deliberately indifferent because he knew of and disregarded a known risk to Frye's safety, and that Wilt's deliberate indifference caused the plaintiff's harm. Accordingly, Wilt is not entitled to judgment as a matter of law on this claim.

## V.     <u>Conclusion</u>

For the foregoing reasons, the defendants' motion for summary judgment is

DENIED.

An appropriate order will follow.


/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge